785 So.2d 950 (2001)
Kellie STEPHERSON, Plaintiff-Appellee,
v.
WAL-MART STORES, INC., Defendant-Appellant.
No. 34,547-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
*952 Barham & Warner, by Vicki C. Warner, Lucien H. Marioneaux, Jr., Counsel for Appellant.
C. Daniel Street, Counsel for Appellee.
Before BROWN, CARAWAY and DREW, JJ.
BROWN, J.,
Defendant, Wal-Mart Stores, Inc., has appealed a judgment in favor of plaintiff, Kellie Stepherson, awarding her damages for injuries she sustained when a dumbbell rolled off a shelf and fell onto her foot. For the reasons set forth below, we affirm.

*953 Facts and Procedural Background

On August 23, 1997, plaintiff, Kellie Stepherson, and her sons (10-year-old triplets) were shopping at the Wal-Mart Supercenter in Monroe, Louisiana. While her boys were looking at bicycles, Mrs. Stepherson was checking out the exercise equipment. Mrs. Stepherson picked up a dumbbell from a display shelf. The metal shelf was flat, horizontal, and approximately 16 to 22 inches deep. The shelf did not have any type of restraining device such as a lip or guard on its edge. Dumbbells are round on each end with a handle in between; the weights Mrs. Stepherson was looking at did have a small, flat area on each of the rounded ends.
At the time Mrs. Stepherson examined the dumbbells, they were stacked on the shelf. The height of the particular shelf from which she took the dumbbell was disputed by Wal-Mart; however, when asked if other dumbbells were located underneath the shelf, Mrs. Stepherson stated that there probably were "because they had a whole section of them ... but most of the ones I noticed were right there at my reaching level." Specifically, Mrs. Stepherson testified:
They (dumbbells) ranged in weight from five to eight, to ten pounds and they were displayed and stacked upon a shelf that was about chest high to me, not in a box. There were some over to the right that were in a box. But these were not. They were just stacked up there. (Emphasis added).
And later, on cross examination, Mrs. Stepherson stated:
I just put it (dumbbell) back and I guess I had turned towards my buggy. And then I did not actually see it roll off. It just rolled off and hit my toe.
The dumbbell shattered and broke Mrs. Stepherson's left big toe. She stated that her toe immediately turned black and the pain caused her to almost pass out.
The Wal-Mart manager who investigated the accident, Mark Florita, reported that Mrs. Stepherson indicated to him that she was injured by a weight which fell from a shelf approximately one foot off the floor. Florita also testified that the management was aware that the dumbbells were being stacked one upon another by Wal-Mart employees as well as customers. No photographs of the shelving were taken. Wal-Mart disputed the height from which the dumbell fell based solely on what Florita wrote in his report.
After taking information from Mrs. Stepherson, Florita had her taken to her car in a wheelchair. From there she drove to the hospital for treatment at the emergency room. Mrs. Stepherson sought followup care from her family physician.
Thereafter, Mrs. Stepherson filed the instant action against Wal-Mart, seeking damages for her injuries. A bench trial was held on February 3, 2000. On July 7, 2000, the trial court rendered judgment in favor of Mrs. Stepherson, awarding general damages in the amount of $16,500 and specials in the amount of $561.25. It is from this judgment that Wal-Mart has appealed.

Discussion

Liability
Wal-Mart first asserts that the trial court erred in finding the store liable for Mrs. Stepherson's injuries. According to Wal-Mart, Mrs. Stepherson failed to establish that a hazardous condition or defect existed. Alternatively, it is Wal-Mart's position that Mrs. Stepherson was comparatively negligent and that the trial court erred in finding no fault on her part.
La.R.S. 9:2800.6 provides in pertinent part:

*954 (A) A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
Section 2800.6(B) delineates a merchant's liability for falls on the premises and is inapplicable to falling merchandise cases. In Edwards v. K&B, Inc., 26,002 (La.App.2d Cir.08/17/94), 641 So.2d 1040, 1045, we stated:
In our view, § 2800.6(B), as amended in 1990, did not change the law applicable to falling merchandise claims. These claims continue to be governed by the principles stated in § 2800.6(A) and in Bell, supra (Bell v. Bestyet Discount Foods, 372 So.2d 781, (La.App. 2d Cir. 1979)). The merchant must use reasonable care to keep his aisles, passageways and floors in a reasonably safe condition, free of hazards which may cause injury. § 2800.6(A). A plaintiff who is injured by falling merchandise must prove that a premise hazard existed, and may do so by circumstantial evidence. Once the plaintiff proves a prima facie premise hazard, the defendant has the burden to exculpate itself from fault by showing that it used reasonable care to avoid such hazards by means such as periodic cleanup and inspection procedures. Bell, supra, 372 So.2d at 784; Tobin v. Wal-Mart Stores, Inc., supra (Tobin v. Wal-Mart Stores, Inc., 575 So.2d 946 (La.App. 2d Cir.1991)); Courville v. Piggly Wiggly Bunkie Co., 614 So.2d 1366 (La.App. 3d Cir.1993).
Wal-Mart Supercenter is a large retail warehouse. Its practice is to stack and display merchandise so that it is freely accessible to customers who are encouraged to handle and replace the goods. As a consequence of this profitable strategy, injuries from falling merchandise occur. The question presented is how far the storekeeper must go to protect its customers against this consequence of the self-service merchandising system.
The merchant has a duty to safely shelve or display its merchandise to include the foreseeable removal and replacement of the goods by its customers. The store has a responsibility to check the shelves periodically to ensure that the merchandise remains in a safe condition. Smith v. Toys "R" Us, Inc., 98-2085 (La.11/30/99), 754 So.2d 209; Belgard v. Brookshire Grocery Co., 00-0058 (La.App. 3d Cir.10/12/00), 771 So.2d 670; Mannina v. Wal-Mart Stores, Inc., 99-1102 (La.App. 5th Cir.02/29/00), 757 So.2d 98, writ denied, 00-0917 (La.06/02/00), 763 So.2d 597.
To prove the existence of a premise hazard, a plaintiff in a "falling merchandise" case must demonstrate that: (1) she did not cause the merchandise to fall; (2) another customer in the aisle at that moment did not cause the merchandise to fall; and (3) the merchant's negligence was the cause of the accident, i.e., that either a store employee or another shopper placed the merchandise in an unsafe position on the shelf or otherwise caused the merchandise to be in such a precarious position that eventually, it does fall. Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84; Smith, supra; Mannina, supra.
As emphasized by the supreme court in the recent Davis and Smith decisions, circumstantial evidence is sufficient to show that a premises hazard existed. See also Edwards v. K & B, Inc., supra. Once a claimant proves a prima facie premises hazard, the merchant has the burden to exculpate itself from fault by *955 showing that it used reasonable care to avoid such hazards by means such as periodic inspection and correction procedures. Davis, supra; Smith, supra; Wright v. Wal-Mart Stores, Inc., 31,764 (La.App.2d Cir.05/05/99), 737 So.2d 153; Edwards, supra.
On the other hand, although evidence of adequate inspection and clean up procedures may be part of the storekeeper's burden to disprove negligence, evidence of the opposite is relevant as part of the customer's burden to prove negligence. Smith, supra; Belgard, supra. A plaintiff will carry her burden if she can make a prima facie showing that inadequate or neglected inspection and clean up procedures left merchandise in such an unstable or precarious position that it fell from its stacked or displayed position to cause injuries to her. Smith, supra; Mannina, supra.
The trial court's findings of fact regarding such hazardous conditions are subject to the manifest error standard of review. Smith, supra; Belgard, supra; Mannina, supra. Likewise, the trial court's determinations regarding issues of apportionment of fault and comparative negligence will be upheld unless they are manifestly erroneous or clearly wrong. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990); Henderson v. Sutherland's Lumber Co., 31,714 (La. App.2d Cir.03/31/99), 733 So.2d 667; Harig v. State, Board of Elementary & Secondary Education, 25,702 (La.App.2d Cir.03/30/94), 635 So.2d 485.
The following is excerpted from the trial court's well-written reasons for judgment:
On the date in question Mrs. Stepherson was on the premises of Wal-Mart, Inc., for the purpose of shopping and probably purchasing items before she and her children left. The Monroe, Louisiana, Wal-Mart Supercenter is set up just like all other Wal-Mart stores throughout the nation and world. It is basically a self-service store with items displayed on shelves and other type displays. In a very basic marketing scheme Wal-Mart displays this and all other merchandise in an attractive manner, which encourages customers to stop, contemplate, handle and hopefully buy the displayed merchandise. Wal-Mart, Inc., did not become the world's largest retailer by making it difficult for customers to shop in their stores.
Mrs. Stepherson testified that she was possibly interested in purchasing some light dumbbells and when she saw those she picked one up to examine it and determine whether or not it was what she was looking for. These dumbbells had been placed in the racks by, obviously, Wal-Mart employees. They were round and coated with exception of a small flattened area on each side. There is no way to determine how many [times] the dumbbells on that shelf had been handled and placed back on the rack by potential purchasers. There is also no way to tell how the Wal-Mart employees placed the dumbbells on the display shelf. This was not and is not the problem of the customer, in this case, Mrs. Stepherson. Additionally, the Court has concluded that the display shelf itself had no restraint on it which would have prevented the other displayed merchandise from rolling forward if the rounded portion of the dumbbell was in the greatest position. The Court has concluded that Mrs. Stepherson did not act in a negligent or unreasonable manner when she picked up the merchandise to examine it. In fact, she was acting exactly in the manner Wal-Mart, Inc., wanted her to act. In this instance the basic laws of physics *956 won out over every other factor. The manner in which this merchandise was displayed and the fact that there was no forward restraint caused this event to occur.
In determining liability the Court has charged itself with the particular and peculiar circumstances of this event and balanced that with that it considers the applicable jurisprudence and statutory law. The Court has concluded that plaintiff has met the burdens and thresholds outlined in the matter of Smith v. Toys "R" Us, Inc., 98-2085 (La.11/30/99), 754 So.2d 209.
* * *
In its review of the facts and evidence of this case the Court has concluded that plaintiff Mrs. Stepherson has met the burdens imposed upon her by both jurisprudence and statute and was not at fault in any manner concerning this event. Accordingly, considering the facts, evidence and the totality of the surrounding circumstances the court has formed the opinion that defendant is solely responsible and negligent in this event. The Court attaches no comparative fault to plaintiff Mrs. Stepherson.
In this case, the falling merchandise, a dumbbell, was rounded and weighed somewhere between five and ten pounds; the dumbbells were displayed at chest level on an unsecured shelf without any restraining safety devices such as a security bar;[1] they were stacked on top of each other; and, customers were encouraged to pick up and return the weights to the shelf. This manner of displaying these weights created an unreasonable risk of harm that could have been easily remedied; however, because the store believed its display was reasonable, Wal-Mart did nothing to correct the problem. Not only was it foreseeable but the merchant expected and anticipated that customers would handle and move this merchandise. Mrs. Stepherson did nothing that was not anticipated by Wal-Mart and neither her conduct nor that of another customer was an intervening cause absolving Wal-Mart from liability.
After reviewing the record in its entirety, we cannot say that the trial court was clearly wrong in its determination that the accident was caused solely by the negligence of the merchant, Wal-Mart.

General Damages
Wal-Mart argues that the trial court abused its discretion by awarding excessive general damages to Mrs. Stepherson. According to Wal-Mart, the evidence does not support an award of $16,500 for Mrs. Stepherson's broken toe.
General damages do not have a common denominator, but are decided on a case by case basis. Strouse v. M & M Properties, 32,792 (La.App.2d Cir.03/03/00), 753 So.2d 434; Morrison v. Kappa Alpha PSI Fraternity, 31,805 (La. App.2d Cir.05/07/99), 738 So.2d 1105, writs denied, 99-1668 (La.9/24/99), 747 So.2d 1120, 99-1607 (La.9/24/99), 749 So.2d 634, 99-1622 (La.09/24/99), 749 So.2d 635. General damages involve mental or physical pain or suffering, inconvenience, loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Id.; Killough v. Bituminous Casualty Corporation, 28,329 (La. App.2d Cir.04/08/96), 674 So.2d 1091; Kessler v. Southmark Corporation, 25,941 (La. App.2d Cir.09/21/94), 643 So.2d 345.
*957 The trial court has much discretion in the assessment of general damages. La.C.C. art. 2324.1. The appellate court will not disturb an award of general damages unless the record clearly reflects that the trial court abused its discretion in making the award. Reichert v. State, Dept. of Transportation and Development, 96-1419 (La.05/20/97), 694 So.2d 193; Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Only when an award is in either direction beyond that which a reasonable trier of fact could assess for the effects on the particular plaintiff under the particular circumstances should an appellate court increase or decrease the award. Youn, supra.
After reviewing the record, we find no abuse of the trial court's discretion in this particular case. At the time of the accident, Mrs. Stepherson, aged 45, was the mother of 10-year-old triplet sons and a senior in the occupational therapy program at Northeast Louisiana University (now known as University of Louisiana at Monroe).
As a result of the accident, Mrs. Stepherson suffered a comminuted fracture of her left big toe. She developed a fracture blister on the top of her injured toe that oozed for some time and eventually lost her toenail. Her treating physician put her in a walking boot for three months that was cumbersome and caused her difficulty. Mrs. Stepherson testified that she suffered pain and discomfort each time she stepped down on the walking boot.
The trial court found that Mrs. Stepherson's injury failed to resolve itself within the three-month time estimate given by her doctor, that it was painful whenever Mrs. Stepherson's foot and toe were bumped and that she had great difficulty wearing a shoe. The trial court further found that Mrs. Stepherson's injury was compounded because of her status as a student, which made her reluctant to take medication which would cause problems with her class and test schedules. The court found that Mrs. Stepherson's swelling and pain did not reach maximum resolution until nine months post-accident. Finally, the trial court found that Mrs. Stepherson had suffered a very painful injury and that she had not malingered or exaggerated in any manner.
As noted above, we find no abuse of the trial court's discretion. In a case such as this one, many of the plaintiff's complaints are necessarily subjective and the trier of fact, which hears the testimony, is afforded much deference in its decision to credit that testimony. We cannot say that the trial court's award of $16,500 is abusively high.

Conclusion
For the reasons set forth above, the judgment of the trial court is AFFIRMED. Costs are assessed to defendant-appellant, Wal-Mart Stores, Inc.
NOTES
[1] We note that some dumbbells were in a box which would have restrained these particular weights from rolling off the shelf.