_JjWILLIAMS, Judge.
The plaintiffs, Teddy Wayne King and Julie Warden King, on behalf of their child, Katelyn King, appeal a trial court judgment in favor of the defendant, Toys “R” Us-Delaware, Inc. The trial court dismissed plaintiffs’ claims, finding that plaintiffs failed to present evidence to establish either that a condition on the premises presented an unreasonable risk of harm or that the defendant did not exercise reasonable care. For the following reasons, we reverse, render and remand.
FACTS
On December 20, 1996, Julie King went to a Toys “R” Us store located in Shreveport, accompanied by her mother, Donnys Warden, and her five-year-old daughter, Katelyn. After entering the store at approximately 11:30 a.m., Julie King proceeded to a different part of the premises, separating from Mrs. Warden and Katelyn, who continued browsing on their own. As Warden and Katelyn walked around a corner into one of the aisles, an 18-pound easel fell from a shelf, striking Katelyn on the head and knocking her to the floor. At trial, Warden testified that the easel fell without warning and without anyone moving the item. A store employee testified that he had seen Katelyn touching the shelf just before the easel fell.
The plaintiffs, Teddy and Julie King on behalf of Katelyn King, filed a petition for damages against the defendant, Toys “R” Us-Delaware, Inc. After a trial, the district court issued written reasons for judgment, finding that the plaintiffs had failed to satisfy LSA-R.S. 9:2800.6, which required that they produce evidence to establish that the defendant did not exercise 1 ¡¡reasonable care to keep the premises in a reasonably safe condition. The trial court rendered judgment dismissing plaintiffs’ claims. The plaintiffs appeal the judgment.
DISCUSSION
The plaintiffs contend the trial court erred in finding that the evidence presented did not prove either that a hazard existed or that the defendant failed to exercise reasonable care. Plaintiffs argue that the evidence established a prima facie premises hazard and that defendant is liable for the child’s injuries.
A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles and passageways in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might cause damage. LSA-R.S. 9:2800.6. A plaintiff who is injured by falling merchandise must prove that a premise hazard existed and may do so with circumstantial evidence. Once the plaintiff proves a prima facie premise hazard, the defendant has the burden to exculpate itself from fault by showing that it used reasonable care to avoid such hazards by means such as periodic inspection procedures. Stepherson v. Wal-Mart Stores Inc., 34,547 (La.App.2d Cir.4/4/01), 785 So.2d 950.
To prove the existence of a premise hazard, a plaintiff in a “falling merchandise” case must demonstrate that: (1) she did not cause the merchandise to fall; (2) another customer in the aisle at that moment did not cause the merchandise to fall; and (3) the merchant’s negligence was the | ¡¡cause of the accident, i.e., that either a store employee or another shopper placed the merchandise in an unsafe position on the shelf. Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84; Stepherson, supra.
*972 A court of appeal should not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The task of a reviewing court is to assess whether the fact finder’s resolution of conflicting evidence was reasonable in light of the record as a whole. Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
In the present case, Warden testified that when she and her granddaughter entered the aisle, there were not any other customers or store employees in the immediate vicinity. Joe Wood, a store employee at the time of the accident, testified that he had not seen any person in the aisle other than Warden and the little girl. Thus, the evidence showed that at that time, there was no other customer present who could have caused the merchandise to fall.
Warden testified that Katelyn did not climb on any store shelves. However, Wood testified that while walking through the store he observed the little girl standing on the bottom shelf and that she reached up with one hand and “grabbed” the shelf which held the easel. He stated that the girl was “hanging on” to the slanted shelf and that a three-inch “fence” ran along the shelf edge to keep items from falling. In its reasons for judgment, the trial court noted the conflicting testimony and found insufficient 14evidence to establish that the premises presented an unreasonable risk of harm or that the defendant failed to exercise reasonable care.
Wood further testified that he witnessed the accident from 30 to 35 feet away while looking between assorted merchandise displayed in two other interceding aisles and that it seemed to him the girl was “putting some weight” on the shelf. However, Wood did not explain how he could know from his vantage point whether the five-year-old child was actually placing any weight upon the shelf, much Jess whether the weight would have been sufficient to topple an 18-pound box that was properly shelved.
There was no testimony that the girl touched, pushed or pulled the easel before it fell. Even if the young girl grabbed or shook the shelf, this fact by itself does not relieve the defendant of liability. In Ste-pherson, this court affirmed a finding that the store negligently displayed dumbbell weights, even though the customer had picked up one of the weights and placed it back on the shelf prior to her injury.
Here, there was testimony by a store worker, Johnny Palm, that other employees had moved the easels from the floor to their position on the upper shelf, which was set at an angle toward the customers at a height of approximately five feet from the floor. Palm stated that six-inch “fences” were placed along the edge of angled shelves to prevent the goods from falling. He testified that there should have been a fence on the shelf holding the easels, but could not say whether one was in place at the time of the accident.
| BThe store manager, Cheryl Graves, testified that employees were responsible for placing toys safely on the shelves so they would not fall and for inspecting the shelves periodically to see that the toys were secure. She stated that workers were required to check the shelves every hour, but acknowledged that the store did not have a written schedule of inspections and did not keep any records showing how frequently inspections were done. Graves testified that any inspections to check the placement of merchandise on the shelves were visual only and that she did not know when the aisle was last inspected prior to the .accident, other than her initial walk *973 through the store at 8:00 a.m., approximately three and one-half hours earlier.
The plaintiffs presented evidence that the falling merchandise, an 18-pound easel in a 26-inch tall box, was displayed on an upper shelf slanted down toward customers in the aisle with only a narrow guard or fence in place along the edge of the shelf to hold the product in place. The easels were displayed at an adult’s eye-level and so were in a position above a child’s head. This manner of displaying the merchandise created an unreasonable risk of harm since the little girl’s act of grabbing the shelf should not have caused the 18-pound box to topple over if it had been securely placed on the shelf.
Based upon this record, the plaintiffs established by a preponderance of the evidence a prima facie case that defendant’s employees caused the toy | fito be in an unreasonably dangerous position, which could have been easily remedied. Consequently, we must conclude that the trial court erred in finding that a hazardous condition did not exist on the defendant’s premises. Because plaintiff proved a pri-ma facie premises hazard, the defendant was required to show that it used reasonable care to avoid such a condition.
The plaintiffs contend the trial court erred in finding that defendant exercised reasonable care to keep its aisles in a safe condition. Although evidence of adequate inspection procedures may be part of the merchant’s burden to disprove negligence, evidence of inadequate or neglected inspection methods is relevant to prove negligence. Stepherson, supra.
Here, Graves testified that store employees were trained in safety measures, including the presentation of a video when hired. She explained that the video depicted a customer “climbing” up and pulling a box from a shelf and described the actions employees should take in response. Graves also stated that workers were supposed to inspect the aisles every hour in their areas to check the placement of merchandise on the shelves.
However, Palm testified that he did not recall that inspections were supposed to be done every hour and that he did routine checks of the aisles whenever there was a chance during the day. Palm stated he was instructed to inspect the merchandise on the shelves to make sure that items were in their proper place, because customers were “always taking things off the shelves.”
Wood testified that he was shown a video explaining safety procedures when hired, but he did not remember receiving any training 17about methods for properly placing items on shelves. Wood acknowledged that he did not inspect aisles for safety as part of his job and that store managers did not talk with him about any particular procedure for inspecting the aisles. Wood testified that he previously had seen other children climbing on shelves at the store and that this was not unusual.
The testimony showed that store employees were responsible for safely placing toys on the shelves so that the merchandise did not fall and for periodically checking the shelves to ensure that the merchandise was in a safe position. Although Graves stated that employees were supposed to inspect the aisles every hour, she did not have any knowledge of whether the aisle where the accident occurred had been inspected by any employee after her initial walk through the entire store several hours earlier. The other two store employees who testified acknowledged that in fact, they did not inspect the merchandise on the shelves every hour, nor did they recall that such hourly inspections were required as part of their job.
*974 Thus, the testimony demonstrated that the asserted requirement of hourly safety inspections was either neglected by the store employees or was inadequately communicated to them by the defendant. Additionally, the store employees were admittedly aware that customers and children would touch or lean on shelves to look at the merchandise and this behavior should have been considered by the defendant in the exercise of reasonable care with respect to shelving the products.
The testimony indicated that the defendant lacked a systematic procedure for the periodic and regular inspection of the safety of the [Sshelves. Consequently, the defendant failed to satisfy its burden to exculpate itself from fault by producing evidence that it acted reasonably to avoid the premise hazard.
Based upon this record, we conclude that the trial court was clearly wrong in finding that defendant exercised reasonable care to maintain the premises in a safe condition. Accordingly, we shall reverse the judgment. We note that in dismissing plaintiffs’ claims, the trial court did not address the issue of damages. We shall remand this case for an assessment of damages.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is reversed and judgment is hereby rendered in favor of the plaintiffs on the issue of liability. This case is remanded to the district court for an assessment of damages. Costs of this appeal are assessed to the appellee, Toys “R” Us-Delaware, Inc.
REVERSED, RENDERED AND REMANDED.
BROWN, J., concurs with reasons.